**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1760-22

ELIZABETH R. SCHREIBER and
JUSTIN SCHREIBER, her husband,

     Plaintiffs-Respondents,

v.

NEW JERSEY DEPARTMENT OF
THE TREASURY, STATE OF NEW
JERSEY, KENNETH T. KEYWORTH
and NICOLAS A. VAZQUEZ,

     Defendants-Respondents,

_____

NICOLAS A. VAZQUEZ,

     Plaintiff-Appellant,

v.

KENNETH T. KEYWORTH and
ELIZABETH R. SCHREIBER,

     Defendants-Respondents.

_____

ERICA I. PORTAL,

Plaintiff,

v.

KENNETH T. KEYWORTH,

     Defendant,

and

ELIZABETH R. SCHREIBER,

     Defendant/Third-Party
     Plaintiff,

v.

NICOLAS A. VAZQUEZ,

     Third-Party Defendant.

_____

Submitted March 12, 2024 – Decided May 6, 2024

Before Judges Paganelli and Whipple.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket Nos. L-4764-19, L-3401-20 and L-3405-20.

Chazen and Chazen, LLC, attorneys for appellant (David K. Chazen, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondents New Jersey Department of Treasury and Kenneth T. Keyworth (Sara M. Gregory, Assistant Attorney General, of counsel; Jae K. Shim, Deputy Attorney General, on the brief).

2

PER CURIAM

Plaintiff Nicolas A. Vazquez appeals from a January 17, 2023 order granting defendants New Jersey Department of the Treasury, State of New Jersey, and Kenneth T. Keyworth summary judgment and dismissing plaintiff's personal injury action under the New Jersey Tort Claim Act (TCA), N.J.S.A. 59:1-1 to :12-3. We affirm.

We glean the facts and procedural history from the motion record. Plaintiff alleges he sustained personal injuries when his vehicle was struck from the rear by defendants' dump truck. He claims MRIs revealed cervical and lumbar disc herniations and bulges. His pain management physician opined these injuries "c[ould ]not be reversed and/or restored to a normal state of function and anatomy" and while "[s]ymptoms may be alleviated by another pain management intervention or surgical intervention . . . [it would] do nothing to the underlying pathology and that area will not heal to function normally."

The pain management physician further opined plaintiff's "pain and pathology are [a] direct consequence" of the motor vehicle accident and "all injuries are direct results of the current accident."

As a result of the accident and claimed injuries, plaintiff contended he:

c[ould] no longer, by way of example but not by way of limitation, engage in: cycling, hiking, swimming, jogging, working out at gym, housecleaning, yard work, heavy lifting, motorcycle riding. . . . [Also] as a result of these injuries [he wa]s limited, by way of example but not by way of limitation, in engaging in: difficulty getting out of bed, getting dressed, walking, standing, sitting, driving, difficulty getting up from the floor, difficulty grocery shopping, difficulty studying and advancing career, constant pain and limitations affect all daily living activities, difficulty sleeping, sexual activity [wa]s less vigorous and frequent due to pain and physical limitations.

Plaintiff testified he lived with his grandmother and "t[ook] care of everything around the house for her." He explained "taking care of a [ninety]-year-old can have all of its challenges"; he helped her a lot; and he was her "primary care[giver]" doing the best he could. He also explained they shared the cooking and cleaning duties.

Plaintiff stated he was employed on the date of the accident. He "worked different positions within the business from waiter to bartender" to "working in the kitchen." Because of the accident, he missed two weeks of work. When he returned to work, he "stopped [performing] the multi-role" and "stuck to being a bartender." He explained being a bartender involved less movement; his co-workers helped him with tasks; and he adapted by carrying plates using a very

large tray.  He noted while he "performed everything through pain," he "needed to work."

Plaintiff filed a complaint alleging defendants' negligence caused his injuries and he sought damages.  After the completion of discovery, defendants filed a motion for summary judgment seeking to dismiss plaintiff's claims under the TCA.

In a written opinion, the judge considered whether plaintiff "sustained a permanent, substantial loss of bodily function pursuant to the" TCA.  The judge reviewed plaintiff's:  moving papers; expert's report; testimony; and answers to interrogatories.  Moreover, the judge gave plaintiff all reasonable inferences but could "not find that [p]laintiff ha[d] demonstrated an objective permanent injury and a permanent loss of bodily function."

Instead, the judge noted plaintiff's assertion that he was

> unable to perform certain tasks and/or engage in certain activities without experiencing some level of pain. . . . such as running, hiking, swimming, exercising, and the like because of complaints of pain.  Plaintiff's impairments appear[ed] to be limited to participating in activities or performing tasks such as cleaning his home.

The judge found:

> [p]laintiff's reduced ability or function when engaging in those activities d[id] not rise to the level of

permanent and substantial injury as [wa]s required by the TCA. Plaintiff's subjective complaints of experiencing a sensation of pain when he engages in certain activities or performs certain tasks d[id] not rise to the level of a permanent loss of a bodily function. Th[e] [c]ourt note[d] that the record [wa]s clear with respect to what [p]laintiff ha[d] stated he can and cannot do, but there ha[d] been no demonstration of anything other than pain that [p]laintiff experiences when he engages in certain activities.

Ultimately, the judge found "[p]laintiff[']s impairments [we]re limited to an ability to participate in activities rather than a permanent loss of a bodily function."

On appeal, plaintiff argues the judge "erred in finding that [he] did not sustain a permanent, substantial loss of bodily function pursuant to the [TCA]." We disagree.

We review the grant of summary judgment de novo, applying the same legal standards as the trial court. Green v. Monmouth Univ., 237 N.J. 516, 529 (2019). Thus, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see R. 4:6-2. If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law."

6

DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted). Nicholas v. Mynster, 213 N.J. 463, 478 (2013). "The factual findings of a trial court are reviewed with substantial deference on appeal, and are not overturned if they are supported by 'adequate, substantial and credible evidence.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014) (quoting Pheasant Bridge Corp. v. Twp. of Warren, 169 N.J. 282, 293 (2001)).

In adopting the TCA, the Legislature declared "the public policy of this State that public entities shall only be liable for their negligence within the limitations of [the TCA]." N.J.S.A. 59:1-2. Therefore, "[a]pplication of the summary judgment standard . . . must . . . account for the fact that under the TCA, 'immunity [of public entities] from tort liability is the general rule and liability is the exception.'" Stewart v. N.J. Tpk. Auth./Garden State Parkway, 249 N.J. 642, 655-56 (2022) (second alteration in original) (quoting Garrison v. Twp. of Middletown, 154 N.J. 282, 286 (1998)).

N.J.S.A. 59:9-2(d) provides "[n]o damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; . . . [except] in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment." To satisfy N.J.S.A. 59:9-2(d) a plaintiff

must show "(1) an objective permanent injury, and (2) a permanent loss of a bodily function that is substantial." Gilhooley v. Cty. of Union, 164 N.J. 533, 540-41 (2000) (citing Brooks v. Odom, 150 N.J. 395, 402-03 (1997)). The analysis is fact sensitive. Id. at 541. There is "no per se rule that would be decisive in all cases." Knowles v. Mantua Twp. Soccer Ass'n, 176 N.J. 324, 331 (2003) (citation omitted). "[I]t is the nature or degree of the ongoing impairment that determines whether a specific injury meets the threshold requirement under the [TCA]." Ibid.

Under the second prong of Gilhooley/Brooks[1] "there must be a 'physical manifestation of [a] claim that [an] injury . . . is permanent and substantial.'" Id. at 332 (alterations in original) (quoting Ponte v. Overeem,171 N.J. 46, 54 (2002)).

In Knowles, the Court illustrated two cases, Brooks and Ponte, where plaintiffs failed to establish a permanent, substantial loss of a bodily function. Id. at 333. Brooks and Ponte are substantially similar to the matter here. The Court explained "the plaintiffs in Brooks and Ponte complained that their

---

[1] The judge's opinion did not address the first prong of the Gilhooley/Brooks test—an objective permanent injury. The Department contends the judge "properly determined that [plaintiff] failed to meet the second prong of the Brooks test." Therefore, we offer no opinion on the first prong and focus our attention, as the judge did, on the second prong.

A-1760-22

injuries left them unable to perform certain tasks without pain, but the injuries were not severe enough or verifiable enough to constitute a 'permanent loss of a bodily function.'" Ibid. (citing Brooks, 150 N.J. at 406; Ponte, 171 N.J. at 54).

"Brooks was decided in favor of the defendant because the plaintiff's daily activities, although painful, were not substantially precluded by her injuries." Ibid. (citing Brooks, 150 N.J. at 406). In "Ponte[,] plaintiff . . . was able to return to his former athletic activities and yardwork, albeit with some restrictions." Ibid. (citing Ponte, 171 N.J. at 50-51). Brooks and Ponte stand for the proposition that "[a]n injury causing lingering pain, resulting in a lessened ability to perform certain tasks because of the pain, will not suffice because '[a] plaintiff may not recover under the [TCA] for mere 'subjective feelings of discomfort.'" Id. at 332 (second alteration in original) (quoting Brooks, 150 N.J. at 403).

Applying these principles, we are satisfied the judge correctly found there was no objective evidence that plaintiff's injuries were permanent and substantial. As the judge concluded, plaintiff experienced a "limited ability to participate in activities, rather than a permanent loss of function"; "reduced ability or function"; and "sensation of pain [that] d[id] not rise to the level of permanent loss." In his appellate brief, plaintiff acknowledges "his capacity to

perform the activity is limited and leaves [him] in pain" and "activities requiring exertion are extremely limited and result in pain and discomfort." Under the controlling TCA caselaw, these limitations are not a "permanent loss of function" and are insufficient to maintain a cause of action under N.J.S.A. 59:9-2(d).

To the extent we have not addressed any of plaintiffs' remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION